**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

**STATE OF NEW YORK,**

                                **Plaintiff,**

**v.**
                                                        **97-CV-0596Sr**

**PVS CHEMICALS, INC.,**

                                **Defendant.**

─────────────────────────────

**DECISION AND ORDER**

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

assignment of this case to the undersigned to conduct all proceedings in this case,

including the entry of final judgment.  Dkt. #45.


PVS Chemicals, Inc. ("PVS Chemicals"), seeks an Order directing the

State of New York to remove its facility at 55 Lee Street, Buffalo, New York, from the

registry of Class 2 Inactive Hazardous Waste Disposal Sites; precluding the State of

New York from commencing further proceedings relating to environmental conditions

known to it at the time of the Stipulation and Order of Settlement entered April 18, 2002

("2002 Order of Settlement"), and granting PVS Chemicals' costs and attorneys' fees

related to this motion. Dkt. #80.

## BACKGROUND

On February 10, 1993, the New York State Department of Environmental

Conservation ("NYSDEC"), advised PVS Chemicals that it had "not identified any

hazardous wastes at this site."  Dkt. #80-2, p.4.  As a result, the NYSDEC notified PVS

Chemicals

> of the deletion of such site from the Registry of Inactive
> Hazardous Waste Disposal Sites in New York State.  This
> site will not appear in future registries, unless information is
> brought to our attention which justifies relisting the site.

Dkt. #80-2, p.4.


On July 24, 1997, the State of New York commenced this action alleging

that PVS Chemicals violated the Clean Water Act; Resource Conservation and

Recovery Act; articles 17 and 19 of the New York Environmental Conservation Law and

related state regulations addressing water and air pollution, respectively, and engaged

in a public nuisance by discharging and disposing of pollutants to the waters of New

York, including the Buffalo River and groundwater, to the ground, and to the air, and by

maintaining illegal solid and hazardous waste activities and contaminated conditions at

PVS Chemicals' Buffalo facility.  Dkt. #73 & Dkt. #80, ¶ 3.


The parties entered into the 2002 Order of Settlement obligating PVS

Chemicals to perform a site investigation work plan to test soil and groundwater

conditions at the site, install a cooling tower system or treatment/pH adjustments

system to eliminate point source discharges from the facility to the Buffalo River,

-2-

implement improvements to its containment and conveyance systems, implement a

Continuous Emissions Monitoring System and to pay a fine of $70,000.00.  Dkt. #73,

Dkt. #80, ¶ 5 & Dkt. #85, p.1.  In exchange for the performance of these tasks, the 2002

Order of Settlement provides that it

> shall be in full settlement of all pending civil claims and
> liabilities against defendant, its directors, officers and
> employees that are alleged in the complaint and occurred at
> the facility prior to the effective date of this Stipulation and
> Order.  The Stipulation and Order shall not be construed as
> being in settlement of events regarding which the State lacks
> knowledge, or occurring after the effective date of this
> Stipulation and Order

except as provided in the Reservation of Rights, which states, in relevant part, that

> Nothing contain in this Stipulation and Order shall be
> construed as barring, diminishing, adjudicating or in any way
> affecting:
>
> 1. The State's right to proceed against defendant for any
>    liability that may result from the State's determination,
>    after review of the reports submitted upon performance
>    of the Site Investigation Work Plan, that further
>    groundwater and/or soil-related measures are required
>    by law to be performed by defendant, and defendant's
>    right to defend against the same;
>
> 2. The State's right to enforce this Stipulation and Order
>    against defendant in the event that defendant fails to
>    fulfill any of the terms or provisions hereof;
>
> 3. The Parties' obligation to comply with any and all
>    applicable federal or state laws or regulations;
>
> 4. Any legal or equitable rights or claims, actions,
>    proceedings, suits, causes of actions or demands
>    whatsoever that the State may have against anyone
>    other than defendant, its directors, officers and
>    employees; or

    5.  The State's authority to enforce any and all applicable
laws for the protection of the public health, welfare and
the environment.

Dkt. #73, pp.12-13.


      PVS Chemicals performed its obligations as set forth in the 2002 Order of
Settlement.  Dkt. #80, ¶ 7.


      It is undisputed that the groundwater and soil conditions at the site are
virtually unchanged since before the 2002 Order of Settlement.  Dkt. #80, ¶ ¶ 13 & 26.
Specifically, testing of groundwater conditions at the site conducted in 1986, 1989,
1993, 2001, 2002 and 2003 all confirm about the same soluble concentrations of
cadmium, arsenic and chlorobenzene.  Dkt. #80, ¶ 27 & Dkt. #85, p.1.


      On July 15, 2010, the NYSDEC provided PVS Chemicals with a proposed
Order on Consent requiring PVS Chemicals to submit work plans for an Inactive
Hazardous Waste Disposal Site Remedial Program, including a Site Characterization
Work Plan; a Remedial Investigation/Feasability Study; Interim Remedial Measure
Work Plan; a Remedial Design/Remedial Action Work Plan; and a Site Management
Plan.  Dkt. #80-1.   PVS Chemicals refused to execute the Consent Order based upon
the terms of the 2002 Order of Settlement.  Dkt. #80, ¶ 14.


      By letter dated October 6, 2011, the NYSDEC advised PVS Chemicals
that its facility had been added to the Registry of Inactive Hazardous Waste Disposal

-4-

Sites in New York State as a Class 2 site.  Dkt. #83, p.15.  The Site Information Report

lists sulfuric acid, arsenic, cadmium and chlorobenzene as contaminants of concern.

Dkt. #83, p.17.  A Class 2 Site requires action due to its significant threat to the public

health or environment. *See* http://www.dec.ny.gov/chemical/8654.html

## DISCUSSION AND ANALYSIS

PVS Chemicals argues that the 2002 Order of Settlement precludes the

State of New York from any further action regarding the soil or groundwater conditions

at the site, which have not changed since the execution of the 2002 Order of

Settlement.  Dkt. #80, p.5.  Specifically, PVS Chemicals argues that to allow the

reclassification of the site based upon conditions that existed prior to the 2002 Order of

Settlement would nullify the release extended to PVS Chemicals in return for PVS

Chemicals' agreement to perform costly remedial measures.  Dkt. #80, p.6. PVS

Chemicals emphasizes that arsenic, cadmium and chlorobenzene all met the definition

of hazardous waste and were known to be present in the groundwater at the time of the

2002 Order of Settlement.  Dkt. #80, pp.8-9.

The State of New York argues that the 2002 Order of Settlement reserves

the right to act on the results of the site investigation work plan, including the right to

seek further remedial measures.  Dkt. #83, p.1.  The State of New York notes that PVS'

groundwater and soil investigation, conducted in accordance with the 2002 Order of

Settlement, identified elevated levels of contaminants in the groundwater migrating to

the Buffalo River, which the State of New York is obligated to address.  Dkt. #83, p.5.

-5-

PVS Chemicals replies that its "full settlement of all pending civil claims and liabilities" is meaningless if the State of New York is permitted to reclassify and order remediation of the site based upon 2003 groundwater tests that identify substantially the same soluble concentrations of cadmium, arsenic and chlorobenzene as in 1986.  Dkt. #85, p.6.

"Under New York law, a release – like any contract – must be construed in accordance with the intent of the parties who executed it."  *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001); *See Bank of America Nat. Trust & Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985) ("The interpretation of releases is governed by principles of contract law.").  "The threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous."  *Revson v. Clinque & Clinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000).  "Under New York law, the meaning of a contract that is unambiguous is a question of law for the court to decide."  *Id.*  The meaning of "an ambiguous contract is also to be decided by the court if there is no extrinsic evidence as to the agreement's meaning."  *Id.*  In contrast, the meaning of an ambiguous contract when there is extrinsic evidence as to the agreement's meaning is a question of fact for the factfinder.  *Id.*

"Ambiguous language is language that is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or

business.'" *Id., quoting Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.3d 425, 428 (2d

Cir. 1992).  Conversely, "[c]ontract language is unambiguous when it has 'a definite and

precise meaning, unattended by danger of misconception in the purport of the [contract]

itself, and concerning which there is no reasonable basis for a difference of opinion.'"

*Id., quoting Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.

1989).


            The 2002 Order of Settlement resolves "all pending civil claims and

liabilities against [PVS Chemical] that are alleged in the complaint and occurred at the

facility prior to the effective date of this Stipulation and Order."  Dkt. #73, pp.12.  The

complaint encompassed claims of disposing of pollutants to the ground and maintaining

illegal solid and hazardous waste activities and contaminant conditions at PVS

Chemicals' Buffalo facility.  Dkt. #1 & Dkt. #73, p.1.  In addition, the State was aware of

the soil conditions at the time of the 2002 Order of Settlement and there is no dispute

that these conditions have remained constant subsequent to the 2002 Order of

Settlement.  Dkt. #80, ¶¶ 13, 26 & 27.  Thus, the State of New York did not utilize the

results of the site investigation work plan conducted by PVS Chemicals pursuant to the

2002 Order of Settlement to determine that further groundwater and/or soil-related

remediation measures were necessary nor does it rely upon newly discovered

information about the conditions at the site to justify further administrative action.  Dkt.

#80, ¶ 7.  Accordingly, the unambiguous language of the release prevents the State of

New York from proceeding against PVS Chemicals with respect to any groundwater

and/or soil-related measures relating to conditions known to exist at the time of the

2002 Order of Settlement.  This determination does not usurp the State's authority to determine that these hazardous wastes constitute a significant threat to the public health or environment and to develop and implement an inactive hazardous waste disposal site remedial program for the site, however, but only enforces the State of New York's release of PVS Chemicals for the costs of any such remediation.


## CONCLUSION

For the reasons set forth above, PVS Chemicals' motion is granted solely with respect to its request that the State of New York be precluded from commencing further proceedings against PVS Chemicals to develop, implement or fund an inactive hazardous waste disposal remediation program for PVS Chemicals' Buffalo facility relating to environmental conditions known to it at the time of the 2002 Order of Settlement.


**SO ORDERED.**


**DATED:      Buffalo, New York**
**January 2, 2014**


   **s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**